**CARLSON LYNCH LLP**
Todd D. Carpenter (CA 234464)
tcarpenter@carlsonlynch.com
Scott G. Braden (CA 305051)
sbraden@carlsonlynch.com
1350 Columbia Street, Ste. 603
San Diego, California 92101
Telephone:     619.762.1910
Facsimile:     619.756.6991

*Attorneys for Plaintiff and*
*Proposed Class Counsel*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARION WILLIAMS, on behalf of himself and all others similarly situated,<br><br>                    Plaintiff,<br><br>          vs.<br><br>UDEMY, INC., a Delaware Limited Liability Company, and DOES 1- 50, inclusive,<br><br>                    Defendants. | Case No.  3:21-cv-6489<br><br>**CLASS ACTION COMPLAINT**<br><br>1. **Violation of California's Unfair Competition Laws ("UCL");**<br>   **CAL. BUS. & PROF. CODE §§ 17200,** *et seq.*<br><br>2. **Violation of California's False Advertising Laws ("FAL");**<br>   **CAL. BUS. & PROF. CODE §§ 17500,** *et seq.*<br><br>3. **Violations of California Consumer Legal Remedies Act ("CLRA");**<br>   **CAL. CIV. CODE §§ 1750,** *et seq.*<br><br>**[DEMAND FOR JURY TRIAL]** |

Plaintiff Marion Williams brings this action on behalf of himself and all others similarly situated against Defendant Udemy, Inc. ("Defendant" or "Udemy"), and states:

## I.     NATURE OF THE ACTION

1.     If truthful, discounts benefit both sellers and their customers.  However, as stated by the Ninth Circuit, sellers are "well aware of consumers' susceptibility to a bargain, [and] therefore have an incentive to lie to their customers."  *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1101 (9th Cir. 2013).  This class action seeks monetary damages, restitution, declaratory, and injunctive relief from Defendant arising from its deceptive business practice of advertising fictitious "original" prices and corresponding phantom discounts on its e-commerce website, Udemy.com, where it sells customers online instructional courses on a variety of topics from online web design to time management.

2.     False reference pricing occurs when a seller fabricates a false "original" price for a product, then offers that product at a substantially lower price under the guise of a sale.  The result is an artificial price disparity that misleads consumers into believing that the product they are buying has a higher value than has been established by the market and induces them into making a purchase.  This practice artificially inflates the true market price for these products by raising consumers' internal reference price, and therefore the value consumers ascribe to these products (i.e., demand).  Consequently, this false reference pricing scheme enables retailers, like Defendant, to sell products above their true market price and value—and consumers are left to pay the price.

3.     This illegal scheme and attendant harm can be demonstrated by the following example: a seller is in the business of selling do-it-yourself DVDs.  The seller knows it can sell a particular DVD at $5.00, which represents both the "market" price and the price at which the seller could regularly offer the DVD and make a profit.  However, instead, the seller creates an inflated "original" price for the DVD of $100.00 and advertises the DVD as "on sale" at ***90% off***—rendering the ***"sale" price*** of the DVD $10.00. A consumer happens upon this sale and purchases the DVD, presuming he got a "good deal" on a DVD previously sold—i.e., valued by others in the market—at an "original" price of $100.00.  By presenting the consumer with a false "original" price of $100.00, the seller has fabricated an increase in demand for the DVD through the ***perceived value*** of both the DVD itself and the substantial discount of $90.00.  This, in turn, impacts the market price of the DVD, as more consumers are willing to pay $10.00 for a DVD they

believed was previously sold for $100.00, when in fact, the true market price of the DVD was $5.00.  If the seller tried to sell that same DVD for $10.00 **without** referencing a false original price of $100.00, and the attendant 90% off discount, that seller would not be able to sell any DVDs at $10.00 because the true market price of the DVD, in actuality, is $5.00.  Thus, through the use of a false original price and the corresponding phantom discount of 90% off, the seller created a false "market" price for the DVD at $10.00.  Plaintiff's case seeks to remedy that disparity—the impact on the increase in market price through the Defendant's application of an illegal discounting scheme.

4.      It is well-established that false reference pricing violates state and federal law.  However, sellers, including Udemy, continue to use the tactic because they know they will be able to increase sales and profits by tricking consumers into making purchasing decisions based on the advertised reference prices.  The information available to consumers varies for different types of products, but consumers frequently lack full information about a product and, as a result, often incorporate information from sellers to make purchase decisions.

5.      Through its false and misleading marketing, advertising, and pricing scheme alleged herein, Udemy violated, and continues to violate, California and Federal law, which prohibit the advertisement of goods for sale discounted from former prices that are false.  California and Federal law also prohibit the dissemination of misleading statements about the existence and amount of price reductions. Specifically, Defendant violated and continues to violate: California's Unfair Competition Law, CAL. BUS. & PROF. CODE §§ 17200, *et seq.* (the "UCL"); California's False Advertising Law, CAL. BUS. & PROF. CODE §§ 17500, *et seq.* (the "FAL"); the California Consumer Legal Remedies Act, CAL. CIV. CODE §§ 1750, *et seq.* (the "CLRA"); and the Federal Trade Commission Act ("FTCA"), which prohibits "unfair or deceptive acts or practices in or affecting commerce" (15 U.S.C. § 45(a)(1)) and false advertisements (15 U.S.C. § 52(a)).

6.      Plaintiff brings this action on behalf of himself and other similarly situated consumers who have purchased one or more products through Udemy.com in California that was deceptively represented as discounted from a false reference price.  Plaintiff seeks to halt the dissemination of this false, misleading, and deceptive pricing scheme, to correct the false and misleading perception it has created in the minds of consumers, and to obtain redress for those who have purchased products tainted by this deceptive pricing

scheme.  Plaintiff also seeks to enjoin Defendant from using false and misleading misrepresentations regarding former price comparisons in its labeling, marketing, and advertising permanently. Further, Plaintiff seeks to obtain damages, restitution, and other appropriate relief in the amount by which Defendant was unjustly enriched as a result of its sales offered at a false discount.

7.      Finally, Plaintiff seeks reasonable attorneys' fees pursuant to CAL. CIV. PROC. CODE § 1021.5, as this lawsuit seeks the enforcement of an important right affecting the public interest and satisfies the statutory requirements for an award of attorneys' fees.

## II.      JURISDICTION AND VENUE

8.      This Court has original jurisdiction of this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2).  The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and at least some members of the proposed Class (defined below) have a different citizenship from Defendant.

9.      The Northern District of California has personal jurisdiction over Defendant and is the proper venue for this action pursuant to 28 U.S.C. § 1391(b)(1) because Defendant is a corporation or other business entity that maintains its principal place of business in this jurisdiction and because Defendant conducts substantial business in this district and has sufficient minimum contacts in California, and/or otherwise intentionally avail itself to the California market through the operation of its e-commerce website and headquarters within the State of California.

## III.      GENERAL ALLEGATIONS

### A.      Retailers Benefit from False Reference Pricing Schemes.

10.      Udemy engages in a false and misleading reference price scheme in the marketing and selling of its products on the Udemy e-commerce website.

11.      Sellers substantially benefit from employing false reference pricing schemes and experience increased sales because consumers use advertised reference prices to make purchase decisions.  The information available to consumers can vary significantly amongst different types of products,[1] but

---

[1] Even within a product, consumers may have imperfect information on the individual attributes. Economists describe "search goods" as those whose attributes "can be ascertained in the search process prior to purchase" (*e.g.*, style of a shirt), "experience goods" as those whose attributes "can be discovered only after purchase as the product is used" (*e.g.*, longevity of a shirt), and "credence goods" as those whose attributes "cannot be evaluated in normal use" (*e.g.*, whether the shirt's cotton was produced using organic

consumers frequently lack fundamental information about a product and, as a result, often rely on information from sellers to make purchase decisions, especially when a product's value or quality is otherwise difficult to discern.[2]

12.     Defendant's deceptive advertised reference prices are thus incorporated into the consumer's decision process.  First, a product's "price is also used as an indicator of product quality."[3]  In other words, consumers view Defendant's deceptive advertised reference prices as a proxy for product quality.  Second, reference prices "appeal[] to consumers' desire for bargains or deals."[4]  Academic researchers note how consumers "sometimes expend more time and energy to get a discount than seems reasonable given the financial gain involved," and "often derive more satisfaction from finding a sale price than might be expected on the basis of the amount of money they actually save."[5]  Under this concept, coined "transaction utility" by Noble Prize-winning economist Richard Thaler, consumers place some value on the psychological experience of obtaining a product at a perceived bargain.[6]

13.     Research in marketing and economics has long recognized that consumer demand can be influenced by "internal" and "external" reference prices.[7]  Internal reference prices are "prices stored in

---

farming methods). Darby, Michael R., and Edi Karni. "Free Competition and the Optimal Amount of Fraud." *The Journal of Law and Economics* 16 no. 1 (1973): 67-88, pp. 68-69.

[2] "Not only do consumers lack full information about the prices of goods, but their information is probably even poorer about the quality variation of products simply because the latter information is more difficult to obtain". Nelson, Phillip. "Information and Consumer Behavior." *Journal of Political Economy* 78, no. 2 (1970): 311-329, pp. 311-312. *See also* David Adam Friedman, *Reconsidering Fictitious Pricing*, 100 Minn. L. Rev. 921, 935 (2016).

[3] Grewal, Dhruv, and Larry D. Compeau. "Comparative price advertising: Informative or deceptive?" *Journal of Public Policy & Marketing* (1992): 52-62, p. 54. *Also see* Thaler, Richard. "Mental Accounting and Consumer Choice." *Marketing Science* 4, no. 3 (1985): 199-214, p. 212 ("The [reference price] will be more successful as a reference price the less often the good is purchased. The [reference price] is most likely to serve as a proxy for quality when the consumer has trouble determining quality in other ways (such as by inspection)").

[4] Grewal, Dhruv, and Larry D. Compeau. "Comparative price advertising: Informative or deceptive?" *Journal of Public Policy & Marketing* (1992): 52-62, p. 52.

[5] Darke, Peter and Darren Dahl. "Fairness and Discounts: The Subjective Value of a Bargain." *Journal of Consumer Psychology* 13, no 3 (2003): 328-338, p. 328.

[6] "To incorporate … the psychology of buying into the model, two kinds of utility are postulated: *acquisition utility* and *transaction utility*. The former depends on the value of the good received compared to the outlay, the latter depends solely on the perceived merits of the 'deal'".  Thaler, Richard. "Mental Accounting and Consumer Choice." *Marketing Science* 4, no. 3 (1985): 199-214, p. 205.

[7] Empirical results "suggest that internal reference prices are a significant factor in purchase decisions. The results also add empirical evidence that external reference prices significantly enter the brand-choice decision." Mayhew, Glenn E. and Russell S. Winer. "An Empirical Analysis of Internal and External Reference Prices using Scanner Data." *Journal of Consumer Research* 19, no. 1 (1992): 62-70, p. 68.

memory" (*e.g.*, a consumer's price expectations adapted from past experience) while external reference prices are "provided by observed stimuli in the purchase environment" (*e.g.*, a "suggested retail price," or other comparative sale price).[8]   Researchers report that consumer's internal reference prices adjust toward external reference prices when valuing a product.[9]   For products purchased infrequently, external reference prices can be particularly influential because these consumers have little or no prior internal reference.[10] In other words, "[t]he deceptive potential of such advertised reference prices are likely to be considerably higher for buyers with less experience or knowledge of the product and product category."[11]   Academic literature further reports that "there is ample evidence that consumers use reference prices in making brand choices"[12] and publications have summarized the empirical data as follows:

> Inflated reference prices can have multiple effects on consumers. They can increase consumers' value perceptions (transaction value and acquisition value), reduce their search intentions for lower prices, increase their purchase intentions, and reduce their purchase intentions for competing products … Inflated and/or false advertised reference prices enhance consumers' internal reference price estimates and, ultimately, increase their perceptions of value and likelihood to purchase[.][13]

14.     Sellers, including Defendant, understand that consumers are vulnerable to a good bargain. Thus, Defendant has a substantial financial interest in exploiting this well-known consumer behavioral tendency by inducing consumers into believing they are receiving a good bargain—even when they are not. The human phenomena of disproportionately relying on an initial piece of information when making

---

[8] Mayhew, Glenn E. and Russell S. Winer. "An Empirical Analysis of Internal and External Reference Prices using Scanner Data." *Journal of Consumer Research* 19, no. 1 (1992): 62-70, p. 62.

[9] "Buyers' internal reference prices adapt to the stimuli prices presented in the advertisement. That is, buyers either adjust their internal reference price or accept the advertised reference price to make judgments about the product's value and the value of the deal." Grewal, Dhruv, Kent B. Monroe, and Ramayya Krishnan. "The Effects of Price-Comparison Advertising on Buyers' Perceptions of Acquisition Value, Transaction Value, and Behavioral Intentions." *The Journal of Marketing* 62 (1998): 46-59, p. 48.

[10] As Thalen notes, "the [suggested retail price] will be more successful as a reference price the less often the good is purchased." Thaler, Richard. "Mental Accounting and Consumer Choice." Marketing Science 4, no. 3 (1985): 199-214, p. 212.

[11] Grewal, Dhruv, and Larry D. Compeau. "Pricing and public policy: A research agenda and an overview of the special issue." *Journal of Public Policy & Marketing* 18, no. 1 (1999): 3-10, p. 7.

[12] Kalyanaram, Gurumurthy, and Russell S. Winer. "Empirical Generalizations from Reference Price Research." *Marketing Science* 14, no. 3 (1995): G161-G169, p. G161.

[13] Grewal, Dhruv, and Larry D. Compeau. "Pricing and public policy: A research agenda and an overview of the special issue." *Journal of Public Policy & Marketing* 18, no. 1 (1999): 3-10, p. 7.

1
2
3

a decision, otherwise known as "anchoring,"[14] is especially relevant in this context.[15]  Reference prices are often the *first*, if not the *only*, insight into a product besides the sale price itself, thus consumers use the reference price as a baseline upon which they perceive a product's value.

4
5

**B.    California State and Federal Pricing Regulations Prohibit False "Original price" references and Out-Dated "Original price" references.**

6
7
8
9
10
11
12
13
14

15.    Under California law, a seller may only discount an item from its own ***original price*** for up to 90 days; or in the alternative, it may offer a discount from the original price of an item being offered by a competitor, within the relevant market, for up to 90 days.  In either scenario, a seller can only offer a "sale" from an original price for 90 days.  At that point, on day 91, the seller has two options: the product must either return to its full original price, or the seller may continue to sell the product at the discounted price, ***as long as it discloses to the consumer the date on which the product was last offered for sale at its alleged former price***.  *See* BUS. & PROF. CODE § 17501.  Under California law, a seller cannot use an old, outdated, "original price" as the basis for a sale or discount, unless it discloses to the consumer the date on which the prior original price was offered in the market. *Id.*

15
16
17

16.    Additionally, under the FTCA, when a seller offers a discount from ***its own***, former ***original price***, the original price is required to have been a price at which ***the seller*** held that item out for sale ***on a regular basis***, for a ***commercially reasonable period of time***.  *See* 16 C.F.R. § 233.1(a) and (b).

18
19

**C.    Defendant's Fraudulent Price Discounting Scheme Violates California State Law and Federal Regulations.**

20
21
22
23
24
25
26

17.    Defendant engages in a false and misleading reference price scheme in the marketing and selling of the products offered on its e-commerce website.  Defendant advertises instructional video courses for sale by listing them with a fictitious original price and a corresponding sale price.  The original price communicates "the product's worth and the prestige that ownership of the product conveys."  *Hinojos*, 718 F.3d at 1106 (*citing* Dhruv Grewal & Larry D. Compeau, Comparative Price Advertising: Informative or Deceptive?, 11 J. Pub. Pol'y & Mktg. 52, 55 (Spring 1992) ("By creating an impression of savings, the

27
28

[14] *See* Program on Negotiation, *Anchoring Effect*, HARV. L. SCH., http://www.pon.harvard.edu/tag/anchoring-effect ("[T]he anchoring effect, [is] the tendency for the first offer to "anchor" the bargaining that follows in its direction, even if the offer recipient thinks the offer is out of line.").

[15] Friedman, *supra* note 2, at 933.

presence of a higher reference price enhances subjects' perceived value and willingness to buy the product."). "Misinformation about a product's 'normal' price is . . . significant to many consumers in the same way as a false product label would be." *Hinojos*, 718 F.3d at 1106.

18.     Defendant consistently advertises its products alongside an original price, a calculation of the discount percentage, and the corresponding sale price. The original price, or false reference price, is printed with a "strikethrough," which operates as a baseline that consumers rely on to assess a product's value. The discount percentage is shown alongside the original price to communicate to the consumer that the product is being sold at a substantial discount. The sale price is displayed directly next to the false reference price and discount percentage, thus conveying the "deep discount" at which the product is presently being offered, ostensibly for a limited time.

19.     However, the products sold on Defendant's e-commerce website are never sold at the full original price. The original price merely serves as a false reference price utilized by Defendant as part of a larger scheme to deceptively manufacture deep discounts in an effort to incentivize consumers to make purchases.

20.     How the scheme works: the products (virtual courses) sold on Udemy.com show the original price with a strikethrough alongside the discount percentage, with the corresponding sale price immediately next to the item. For example, as seen in Exhibit A, a product entitled "The Web Developer Bootcamp" shows an original price of "$199.99" directly next to "94% off," which both appear next to the sale price of "$10.99." Frequently, this appears above prominent red text intended to signal the fast-approaching end of the sale, which also can be seen in Exhibit A as "**5 hours** left at this price!" (emphasis original). Attached hereto as Exhibit A are numerous snapshots from Udemy.com acquired through the Wayback Machine— a well-regarded archive of internet webpages as they existed at a singular point in time—depicting the false reference pricing scheme, including of the product used in the above-mentioned example and of the product purchased by Plaintiff.

21.     Defendant further encourages a sense of urgency to act on a "short-lived deal" through the use of an active countdown bar highlighted in yellow at the top of the Udemy.com homepage. However,

when the countdown expires it continues to display "ends in 0s." Attached hereto as Exhibit B are snapshots depicting the yellow countdown bar.[16]

22.    This purposeful practice operates by deceiving consumers into (1) making purchases they otherwise would not have made; and/or (2) paying substantially more for products that consumers believed are heavily discounted, and thus, worth more than their actual value. Thus, Defendant increases sales by creating the illusion of short-lived bargains purporting to offer products on sale from false original prices. The only plausible explanation for this practice is to drive sales, and artificially inflate the perceived value, and consequently the price, at which consumers are willing to buy Defendant's products.

23.    Defendant's perpetual discounting of its products constitutes false, fraudulent, and deceptive advertising because the advertised reference prices it employs list substantially higher prices than those actually offered by Defendant. The reference prices only serve to deceive consumers by providing a benchmark price from which the false discount and corresponding "sale" price are derived.  In effect, Defendant's scheme trick consumers into justifiably believing they are getting a significant deal—when, in reality, consumers are paying the usual retail price for products.

24.    The products sold through Defendant's e-commerce website are *never* offered for sale, nor actually sold, at the advertised reference price. Thus, the purpose of these advertised reference prices is to induce consumers into believing that the products were once sold at the reference price and will be again if the consumer does not act fast in purchasing at the "bargain" price.  Defendant engages in this practice fully aware that the advertised products are never actually offered nor sold at the advertised reference prices in order to facilitate sham markdowns and to drive sales, thereby deceiving its customers into believing they are receiving a substantial bargain. Defendant engages in this practice knowing full well that the advertised products are never actually offered nor sold at the advertised reference prices, or never actually offered nor sold at the advertised reference prices within 90 days of them being discounted on Udemy's e-commerce website.

---

[16] This yellow banner further appears to be just for show because clicking on the banner does not link users to any other webpages providing purported sales and it simply displays text ("Get courses from $14.99 for a limited time a special offer for new students"). Additionally, the countdown pauses if the user minimizes the browser tab or if the computer goes to sleep.

25.     Nowhere on Defendant's website does Defendant disclose that the reference or original prices used are not: (1) former prices; or (2) are not recent (within 90 days), regularly offered former prices; (3) or prices at which identical products are sold elsewhere in the market.   The omission of these disclosures, coupled with Defendant's use of fictitious advertised reference prices, renders Defendant's pricing scheme inherently misleading.

26.     Moreover, the advertised discounts were fictitious because the reference prices did not represent a *bona fide* price at which Defendant previously sold or offered to sell the products, on a regular basis, for a commercially reasonable period of time, as required by the Federal Trade Commission ("FTC"). In addition, the represented advertised reference prices were not the prevailing market retail price within the three months (90 days) immediately preceding the publication of the advertised former reference price, as required by California law.

27.     Thus, Defendant's scheme intends to, and does, provide misinformation to the customer. This misinformation communicates to consumers, including Plaintiff, that the products sold on Defendant's e-commerce website have greater value than the advertised discounted price.

**D.     Investigation**

28.     Products sold on Udemy's e-commerce website are priced uniformly.   That is, the products sold by Defendant bears a substantially discounted sale price that appears next to both the "crossed out" or "strikethrough" original price, and the discount percentage, appearing as "___% off," with discounts typically ranging from 80% to 90% off.   Plaintiff's counsel's investigation confirmed that the merchandise purchased by Plaintiff was priced with a false reference price and a corresponding discounted price for at least the 90-day period immediately preceding Plaintiff's purchase in violation of California law. The merchandise purchased by Plaintiff was not, and is not, offered for sale in any other market.

29.     Plaintiff's counsel's investigators tracked the pricing of certain merchandise offered for sale through Udemy.com at various points from 2019 to 2021.   A sample of the items tracked include: The Web Developer Bootcamp; Machine Learning A-Z™: Hands-On Python & R in Data Science; An Entire MBA in 1 Course: Award Winning Business School Prof; Complete Blender Creator: Learn 3D Modelling for Beginners; Become a SuperLearner 2: Learn Speed Reading & Boost Memory.   For the duration of the tracking period, each product remained significantly discounted from its reference price.   Additionally,

none of the products were ever offered for sale at their respective advertised reference price. The investigation indicated that the false reference pricing scheme was uniform across Defendant's e-commerce website.

30.     Plaintiff's counsel also researched Defendant's e-commerce website through the Wayback Machine. The website snapshots recorded by the Wayback Machine observed across the several months before and after Plaintiff's purchase indicated perpetual discounting uniformly across Defendant's products. *See* Exhibit A.

31.     The false reference price and corresponding discount price scheme were both uniform and identical on almost all products sold through Defendant's e-commerce website.  The only change was the requisite "___% off" on certain products.

32.     Thus, the fraudulent price scheme applies to all products offered for sale through Defendant's e-commerce website, including the product purchased by Plaintiff.

### IV.     PARTIES

**Plaintiff**

33.     Marion Williams resides in Upper Marlboro, Maryland. Plaintiff, in reliance on Defendant's false and deceptive advertising, marketing and discounting pricing schemes, purchased "AWS Certified Solutions Architect – Associate 2020" from Udemy's e-commerce website on his computer on September 25, 2020.   Plaintiff examined several products on Defendant's website before deciding to purchase "AWS Certified Solutions Architect – Associate 2020" after reviewing the item's advertised sale price. The course Plaintiff purchased was advertised as having an original price of $94.99.  Defendant advertised the item as having a sale price, of $12.99, at roughly an 86% discount.

34.     After observing the original price of the item and the accompanying the sale price, Plaintiff believed he was receiving a significant discount on the product he had chosen. Because he was interested in the material presented in the video course and felt that the discounted price would likely not last, and that he was getting a significant bargain on the product, he proceeded to finish checking out and purchased the "AWS Certified Solutions Architect – Associate 2020" course for $12.99.

35.     However, this product was never offered for sale at the original price listed on Udemy's e-commerce website—$94.99—and certainly not within the 90 days preceding Plaintiff's purchase. Neither

Plaintiff's receipt nor any other language on the website observed or relied upon by Plaintiff indicated that the product was not offered previously at the advertised reference price.

36.     Plaintiff was damaged in his purchase because Defendant's false reference price discounting scheme inflated the true market value of the item he purchased.  Plaintiff is susceptible to this reoccurring harm because he cannot be certain that Defendant has corrected this deceptive pricing scheme and he desires to shop at Udemy's e-commerce website in the future as he desires to take additional online courses in areas that interest him. However, he currently cannot trust that Defendant will accurately price its products truthfully and in a non-misleading fashion in compliance with applicable law. Plaintiff does not have the resources on his own to determine whether Defendant is complying with California and Federal law with respect to its pricing practices.

37.     Additionally, because of the wide selection of instructional courses available on Defendant's website, and due to the likelihood that Defendant may yet develop and market additional falsely priced courses for sale online, Plaintiff may again, though by mistake, purchase a falsely discounted instructional course from Defendant under the impression that the advertised reference price represented a *bona fide* former price at which the item was previously offered for sale by Defendant. Indeed, Plaintiff desires to continue purchasing instructional courses from Udemy.com in the future. Moreover, Class members will continue to purchase the Udemy courses while reasonably but incorrectly believing that their advertised reference prices represent *bona fide* former prices at which they were previously offered for sale by Defendant.

38.     Absent an equitable injunction enjoining Defendant from continuing in the unlawful course of conduct alleged herein, Plaintiff, Class members and the public will be irreparably harmed and denied an effective and complete remedy because they face a real and tangible threat of future harm emanating from Defendant's ongoing conduct which cannot be remedied with monetary damages. Accordingly, Plaintiff, Class members, and the general public lack an adequate remedy at law and an injunction is the only form of relief which will guarantee Plaintiff and other consumers the appropriate assurances.

39.     Moreover, Plaintiff lacks adequate remedy at law with respect to his claim for equitable restitution because he has not yet retained an expert to determine whether an award of damages can or will adequately remedy his monetary losses caused by Defendant.  Particularly, as legal damages focus on

remedying the loss to the plaintiff and equitable restitution focuses wholly distinctly on restoring monies wrongly acquired by the defendant, legal damages are inadequate to remedy Plaintiff's loss because Plaintiff does not know at this juncture, and is certainly not required to set forth evidence, whether a model for legal damages (as opposed to equitable restitution) will be viable or will adequately compensate Plaintiff's losses.

40.     Finally, Plaintiff's case is substantially predicated on Defendant's violation of Cal. Bus. & Prof. Code § 17501, an equitable claim, as Plaintiff's counsel's investigation revolved around ensuring that Defendant did not sell products at the indicated reference price within the 90 days preceding Plaintiff's purchase and, likewise, that Defendant failed to disclose to consumers the date on which products was last offered at its advertised reference price.  This claim and test of liability go to the heart of Plaintiff's case and the same test is not available under a CLRA legal claim for damages. Thus, Plaintiff does *not* have an adequate remedy at law because the CLRA does not provide the same metric of liability as Cal. Bus. & Prof. Code § 17501, which is integral not only to Plaintiff's prayer for restitution, but also to Plaintiff's very theory of liability at trial.

**Defendant**

41.     Defendant is incorporated in Delaware with its principal executive offices in San Francisco, California.  Plaintiff is informed and believes that Defendant operates its e-commerce website, Udemy.com, and advertises, markets, distributes, and/or sells products in California and throughout the United States. Defendant's Terms of Use provides that all claims brought against Udemy, including Plaintiff's here, are governed by the laws of the State of California.

42.     Plaintiff does not know the true names or capacities of the persons or entities sued herein as Does 1-50, inclusive, and therefore sues such defendants by such fictitious names.  Plaintiff is informed and believes, and upon such information and belief alleges, that each of the Doe defendants is in some manner legally responsible for the damages suffered by Plaintiff and the Class members as alleged herein. Plaintiff will amend this Complaint to set forth the true names and capacities of these defendants when they have been ascertained, along with appropriate charging allegations, as may be necessary.

43.    The reference prices listed and advertised on products sold through Defendant's e-commerce website are false or severely outdated reference prices, utilized only to perpetuate Defendant's false discount scheme.

44.    Defendant knows that its reference price advertising is false, deceptive, misleading, and unlawful under California and federal law.

45.    Defendant fraudulently concealed from and intentionally failed to disclose to Plaintiff and other members of the Class the truth about its advertised discount prices and former reference prices.

46.    At all relevant times, Defendant has been under a duty to Plaintiff and the Class to disclose the truth about its false discounts.

47.    Plaintiff reasonably relied upon Defendant's artificially inflated reference prices and false discounts when purchasing the "AWS Certified Solutions Architect – Associate 2020" course from Defendant's e-commerce website.   Plaintiff would not have made such purchase but for Defendant's representations regarding the substantial discount being offered for the product.   Plaintiff would like to continue buying from Defendant's e-commerce website in the future but cannot be certain of the veracity of Defendant's advertised bargains.

48.    Plaintiff and the Class reasonably and justifiably acted and relied on the substantial price differences that Defendant advertised, and made purchases believing that they were receiving a substantial discount on a product of greater value than it actually was. Plaintiff, like other Class members, was lured in, relied on, and was damaged by the deceptive pricing scheme that Defendant carried out.

## V.    CLASS ALLEGATIONS

49.    Plaintiff brings this action on behalf of himself and all other similarly situated Class members pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Class against Defendant:

> All persons, within the United States, who, within the preceding four years (the "Class Period"), purchased from Udemy's e-commerce website, one or more products at discounts from an advertised reference price and who have not received a refund or credit for their purchase(s).

Excluded from the Class is Defendant, as well as its officers, employees, agents or affiliates, parent companies and/or subsidiaries, and each of their respective officers, employees, agents or affiliates, and

any judge who presides over this action.  Plaintiff reserves the right to expand, limit, modify, or amend this Class definition, including the addition of one or more subclasses, in connection with his motion for class certification, or at any other time, based upon, *inter alia*, changing circumstances and/or new facts obtained during discovery.

50.    ***Numerosity***: The Class members are so numerous that joinder of all members is impracticable.  Plaintiff is informed and believes that the proposed Class contains at least thousands of individuals who have been damaged by Defendant's conduct as alleged herein.  The precise number of Class members is unknown to Plaintiff at this time, but Plaintiff expects it can readily be established through Defendant's records.

51.    ***Existence and Predominance of Common Questions of Law and Fact***:  This action involves common questions of law and fact, which predominate over any questions affecting individual Class members.  These common legal and factual questions include, but are not limited to, the following:

a.     whether, during the Class Period, Defendant used advertised false reference prices on products sold through its e-commerce website;

b.     whether, during the Class Period, the original price advertised by Defendant was the prevailing market price for the products in question during the three months period preceding the dissemination and/or publication of the advertised former prices;

c.     whether Defendant's alleged conduct constitutes violations of the laws asserted;

d.     whether Defendant engaged in unfair, unlawful and/or fraudulent business practices under the laws asserted;

e.     whether Defendant engaged in false or misleading advertising;

f.     whether Plaintiff and Class members are entitled to damages and/or restitution and the proper measure of that loss;

g.     whether an injunction is necessary to prevent Defendant from continuing to use false, misleading or illegal price comparison; and

h.     whether Plaintiff and the Class are entitled to an award of reasonable attorneys' fees, interest, and costs of suit.

52.     *Typicality*: Plaintiff's claims are typical of the claims of the Class members because, *inter alia*, all Class members have been deceived (or were likely to be deceived) by Defendant's false and deceptive price advertising scheme, as alleged herein.   Plaintiff is advancing the same claims and legal theories on behalf of himself and all Class members.

53.     *Adequacy*: Plaintiff will fairly and adequately protect the interests of the Class members. Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously.   Plaintiff has no antagonistic or adverse interest to those of the Class.

54.     *Superiority*: The nature of this action and the nature of laws available to Plaintiff and the Class make the use of the class action format a particularly efficient and appropriate procedure to afford relief to him and the Class for the wrongs alleged.   The damages or other financial detriment suffered by individual Class members is relatively modest compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant.   It would thus be virtually impossible for Plaintiff and Class members, on an individual basis, to obtain effective redress for the wrongs done to them.   Absent the class action, Class members and the general public would not likely recover, or would not likely have the chance to recover, damages or restitution, and Defendant will be permitted to retain the proceeds of its fraudulent and deceptive misdeeds.

55.     All Class members, including Plaintiff, were exposed to one or more of Defendant's misrepresentations or omissions of material fact in advertising false reference prices. Due to the scope and extent of Defendant's consistent false sale prices, advertising scheme, disseminated in a constant years-long campaign to consumers, it can be reasonably inferred that such misrepresentations or omissions of material fact were uniformly made to all members of the Class. In addition, it can be reasonably presumed that all Class members, including Plaintiff, affirmatively acted in response to the representations contained in Defendant's false advertising scheme when purchasing products sold through Defendant's e-commerce website.

56.     Defendant keeps extensive records of its customers through its online sales data, as well as through, *inter alia*, general marketing programs.  Defendant has one or more databases through which all, or a significant majority of, Class members may be identified and ascertained, and it maintains contact

information, including email and home address, through which notice of this action could be disseminated in accordance with due process requirements.

## VI. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**Violation of California's Unfair Competition Law ("UCL")**
CAL. BUS. & PROF. CODE §§ 17200, *et seq.*

57. Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

58. The UCL defines "unfair business competition" to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. CAL. BUS. PROF. CODE § 17200.

59. The UCL imposes strict liability. Plaintiff need not prove that Defendant intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—but only that such practices occurred.

*"Unfair" Prong*

60. A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications and motives of the practice against the gravity of the harm to the alleged victims.

61. Defendant's actions constitute "unfair" business practices because, as alleged above, Defendant engaged in misleading and deceptive price comparison advertising that represented false reference prices and corresponding deeply discounted phantom "sale" prices. Defendant's acts and practices offended an established public policy of transparency in pricing, and constituted immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

62. The harm to Plaintiff and Class members outweighs the utility of Defendant's practices because Defendant's practice of advertising false discounts provides no utility. There were reasonably available alternatives to further Defendant's legitimate business interests other than the misleading and deceptive conduct described herein.

*"Fraudulent" Prong*

63.    A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

64.    Defendant's acts and practices alleged above constitute fraudulent business acts or practices as it has deceived Plaintiff and is highly likely to deceive members of the consuming public.  Plaintiff relied on Defendant's fraudulent and deceptive representations regarding its false or outdated "original prices" for products sold by Defendant through its e-commerce website.  These misrepresentations played a substantial role in Plaintiff's decision to purchase the product at a purportedly steep discount, and Plaintiff would not have purchased the product without Defendant's misrepresentations.

*"Unlawful" Prong*

65.    A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

66.    Defendant's act and practices alleged above constitute unlawful business acts or practices as it has violated state and federal law in connection with its deceptive pricing scheme.  The FTCA prohibits "unfair or deceptive acts or practices in or affecting commerce" (15 U.S.C. § 45(a)(1)) and prohibits the dissemination of any false advertisements. 15 U.S.C. § 52(a).   Under the FTC, false former pricing schemes, like Defendant's, are described as deceptive practices that would violate the FTCA:

> (a) One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article.  If the former priced is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison.  Where the former price is genuine, the bargain being advertised is a true one.  If, on the other hand, the former price being advertised is not bona fide but fictitious – ***for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction – the "bargain" being advertised is a false one***; the purchaser is not receiving the unusual value he expects. In such a case, the "reduced" price is, in reality, probably just the seller's regular price.
>
> (b) A former price is not necessarily fictitious merely because no sales at the advertised price were made.  The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of her business, honestly and in good faith – and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based.

16 C.F.R. § 233.1(a) and (b) (emphasis added).

67.     In addition to federal law, California law also expressly prohibits false former pricing schemes.  The FAL, BUS. & PROF. CODE § 17501, entitled "*Worth or value; statements as to former price*," states:

> For the purpose of this article the worth or value of any thing advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer is at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.
>
> No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

CAL. BUS. & PROF. CODE § 17501 (emphasis added).

68.     As detailed in Plaintiff's Third Cause of Action below, the CLRA, CAL. CIV. CODE § 1770(a)(9), prohibits a business from "[a]dvertising goods or services with intent not to sell them as advertised," and subsection (a)(13) prohibits a business from "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions."

69.     As detailed herein, the acts and practices alleged were intended to or did result in violations of the FTCA, the FAL, and the CLRA.

70.     Defendant's practices, as set forth above, misled Plaintiff, the proposed Class, and the public in the past and will continue to mislead in the future.  Consequently, Defendant's practices constitute an unlawful, fraudulent, and unfair business practice within the meaning of the UCL.

71.     Defendant's violation of the UCL, through its unlawful, unfair, and fraudulent business practices, are ongoing and present a continuing threat that Class members and the public will be deceived into purchasing products based on price comparisons of arbitrary and inflated "reference" prices and substantially discounted "sale" prices.  These false comparisons created phantom markdowns and lead to financial damage for consumers like Plaintiff and the Class.

72.     Pursuant to the UCL, Plaintiff is entitled to preliminary and permanent injunctive relief enjoining Defendant from further engagement in this unfair competition, as well as disgorgement and restitution to Plaintiff and the Class of all Defendant's revenues wrongfully obtained from them as a result of Defendant's unfair competition, or such portion of those revenues as the Court may find equitable.

1

2

3

**SECOND CAUSE OF ACTION**

**Violation of California's False Advertising Law ("FAL")**
**CAL. BUS. & PROF. CODE §§ 17500,** *et seq.*

4    73.    Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if

5    fully set forth herein.

6    74.    CAL. BUS. & PROF. CODE § 17500 provides:

7    It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of . .
     . personal property or to perform services, professional or otherwise, or anything of any

8    nature whatsoever or to induce the public to enter into any obligation relating thereto, to
     make or disseminate or cause to be made or disseminated . . . from this state before the

9    public in any state, in any newspaper or other publication, or any advertising device, or by
     public outcry or proclamation, or in any other manner or means whatever, including over

10   the Internet, any statement, concerning that . . . personal property or those services . . .
     which is untrue or misleading, and which is known, or which by the exercise of reasonable

11   care should be known, to be untrue or misleading . . .

12   (Emphasis added).

13   75.    The "intent" required by section 17500 is the intent to make or disseminate personal

14   property (or cause such personal property to be made or disseminated), and not the intent to mislead the

15   public in the making or dissemination of such property.

16   76.    Similarly, this section provides, "no price shall be advertised as a former price of any

17   advertised thing, unless the alleged former price was the prevailing market price … within three months

18   next immediately preceding the publication of the advertisement or unless the date when the alleged former

19   price did prevail is clearly, exactly, and conspicuously stated in the advertisement."  CAL BUS. & PROF.

20   CODE § 17501.

21   77.    Defendant's routine of advertising discounted prices from false "reference" prices, which

22   were never the prevailing market prices of those products and were materially greater than the true

23   prevailing prices (i.e., Defendant's actual sale price), constitutes an unfair, untrue, and misleading practice.

24   This deceptive marketing practice gave consumers the false impression that the products were regularly

25   sold on the market for a substantially higher price than they actually were; therefore, leading to the false

26   impression that the products sold through Udemy's e-commerce website were worth more than they

27   actually were.

28

19

CLASS ACTION COMPLAINT

78.     Defendant misled consumers by making untrue and misleading statements and failing to disclose what is required as stated in the Code alleged above.

79.     As a direct and proximate result of Defendant's misleading and false advertisements, Plaintiff and Class members have suffered injury in fact and have lost money.  As such, Plaintiff requests that this Court order Defendant to restore this money to Plaintiff and all Class members, and to enjoin Defendant from continuing these unfair practices in violation of the UCL in the future.  Otherwise, Plaintiff, Class members, and the broader general public, will be irreparably harmed and/or denied an effective and complete remedy.

### THIRD CAUSE OF ACTION

**Violation of California's Consumers Legal Remedies Act ("CLRA"),**
**CAL. CIV. CODE § 1750, *et seq.***

80.     Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

81.     This cause of action is brought pursuant to the CLRA, CAL. CIV. CODE § 1750, *et seq*. Plaintiff and each member of the proposed Class are "consumers" as defined by CAL. CIV. CODE § 1761(d). Defendant's sale of products through its e-commerce website, Udemy.com, were "transactions" within the meaning of CAL. CIV. CODE § 1761(e).  The products purchased by Plaintiff and the Class are "goods" or "services" within the meaning of CAL. CIV. CODE §§ 1761(a) - (b).

82.     Defendant violated and continues to violate the CLRA by engaging in the following practices proscribed by CAL. CIV. CODE § 1770(a) in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of products sold through its website:

      a.     advertising goods or services with intent not to sell them as advertised; § 1770(a)(9); and

      b.     making false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions; § 1770(a)(13).

83.     On August 23, 2021, Plaintiff, through counsel, sent a CLRA demand letter to Defendant that provided notice of Defendant's violation of the CLRA and demanded Defendant correct, repair, replace, or otherwise rectify the unlawful, unfair, false, and deceptive practices complained of herein. The

letter also stated that if Defendant refused to do so, Plaintiff would file a complaint seeking damages in accordance with the CLRA. If Defendant does not respond to Plaintiff's letter or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice pursuant to § 1782, Plaintiff will amend his complaint to seek actual, punitive, and statutory damages, as appropriate against Defendant.

84.    Attached hereto as Exhibit C is a declaration of venue pursuant to Cal. Civ. Code §1780(d).

## VII.    PRAYER FOR RELIEF

Wherefore, Plaintiff, on behalf of himself and all other members of the Class, requests that this Court award relief against Defendant as follows:

a.    an order certifying the class and designating Plaintiff Marion Williams as the Class Representative and his counsel as Class Counsel;

b.    awarding restitution and disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiff and the Class members as a result of its unlawful, unfair, and fraudulent business practices described herein;

c.    awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendant from continuing the unlawful practices as set forth herein, and directing Defendant to identify, with Court supervision, victims of its misconduct and pay them all money they are required to pay;

d.    order Defendant to engage in a corrective advertising campaign;

e.    awarding attorneys' fees and costs; and

f.    for such other and further relief as the Court may deem necessary or appropriate.

## VIII.   DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial for all of the claims so triable.

Dated: August 23, 2021                          **CARLSON LYNCH, LLP**

By:  _/s/ Todd D. Carpenter_
Todd D. Carpenter (CA 234464)
tcarpenter@carlsonlynch.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Scott G. Braden (CA 305051)
sbraden@carlsonlynch.com
1350 Columbia Street, Ste. 603
San Diego, California 92101
Telephone:      (619) 762-1910
Facsimile:      (619) 756-6991

*Attorneys for Plaintiff and
Proposed Class Counsel*

CLASS ACTION COMPLAINT