1

**BRANN & ISAACSON**
DAVID W. BERTONI (*pro hac vice*)
2  DAVID SWETNAM-BURLAND (CA 226216)
EAMONN R.C. HART (*pro hac vice*)
3  184 Main Street, 4th Floor
P.O. Box 3070
4  Lewiston, ME 04243-3070
Tel.: (207) 786-3566
5  Fax: (207) 783-9325
dbertoni@brannlaw.com
6  dsb@brannlaw.com
ehart@brannlaw.com

7

**LAW OFFICES OF RICHARD PACHTER**
8  RICHARD PACHTER (CA 120069)
555 University Avenue, Suite 200
9  Sacramento, CA 95825
Tel.: (916) 485-1617
10  Fax: (916) 379-7838
richard@pachterlaw.com

11

*Attorneys for Udemy, Inc.*

12

UNITED STATES DISTRICT COURT

13

NORTHERN DISTRICT OF CALIFORNIA

14

SAN FRANCISCO DIVISION

15

16

17  MARION WILLIAMS, on behalf of himself
and all others similarly situated,

18                              Plaintiff,

19              vs.

20  UDEMY, INC., a Delaware Limited Liability
Company, and DOES 1-50, inclusive,

21                              Defendants.

22

Case No. 3:21-cv-06489-EMC

**MOTION TO COMPEL
ARBITRATION AND TO
DISMISS PURSUANT
TO RULE 12(b)(3) OR STAY
PENDING ARBITRATION**

Date:     January 20, 2022
Time:     1:30 PM
Judge:    Hon. Edward M. Chen

23

24

25

26

27

28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ i

I.          STATEMENT OF ISSUES ......................................................................... 1

II.         INTRODUCTION...................................................................................... 1

III.        FACTUAL BACKGROUND ..................................................................... 2

   A.     Williams Files His Complaint in Federal Court Asserting Claims Against
       Udemy. .................................................................................................. 2

   B.     Williams Agreed to Udemy's Terms When He Purchased His Course. ................. 3

   C.     The Terms Require Williams to Arbitrate His Claims. ................................. 3

IV.         THE LEGAL STANDARD ON MOTIONS TO COMPEL ARBITRATION. .... 4

V.          ARGUMENT ............................................................................................ 5

   A.     Williams and Udemy Entered into a Binding Arbitration Agreement. ................. 5

       1.     The Agreement Is Binding Because Williams Accepted
           the Terms. .................................................................................. 6

       2.     The Federal Arbitration Act Governs Because the Parties'
           Arbitration Agreement "Involve[s] Commerce." ........................... 7

       3.     The Arbitration Agreement Encompasses the Dispute Because It
           Applies to "All" of Williams' "Activities on the Udemy
           Website." ................................................................................... 7

   B.     Williams Cannot Meet His Burden to Establish That the Parties' Arbitration
       Agreement Is Unenforceable Under *McGill*. ............................................. 8

       1.     The Terms Do Not Prohibit Prospective Public Injunctions. ......... 9

           *a.     The Terms Permit an Arbitrator to Enter a Prospective Public
               Injunction Through Incorporation of the AAA Rules*..........10

           *b.     The Terms' Prohibition on Class Claims is Irrelevant to
                Determining Whether the Terms Prohibit a Prospective
               Public Injunction*…...……………………………………11

           *c.     The Mere Inference of a Prohibition Against Public
                Injunctive Relief is Not Enough to Invalidate an Agreement
               to Arbitrate*……………………………………………..12

       2.     Williams' Complaint Fails the *Hodges* Test. ............................. 12

C.      The Court May Dismiss or Stay the Action Pending Arbitration. ....................... 17

VI.          CONCLUSION ...................................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011)...................................................................................................... 4

*Bentley v. Ctrl. Grp. Media*,
   2020 WL 3639660 (S.D. Cal. July 6, 2020) ............................................................ 6, 7

*Blair v. Rent-A-Ctr., Inc.*,
   2017 WL 4805577 (N.D. Cal. Oct. 25, 2017)........................................................ 13, 16

*Blair v. Rent-A-Ctr., Inc.*,
   928 F.3d 819 (9th Cir. 2019) ................................................................................. 8, 13

*Brennan v. Opus Bank*,
   796 F.3d 1125 (9th Cir. 2015) ..................................................................................... 9

*Burzdak v. Universal Screen Arts*,
   2021 WL 3621830 (N.D. Cal. Aug. 16, 2021) ............................................................ 6

*Chiron Corp. v. Diagnostic Sys., Inc.*,
   207 F.3d 1126 (9th Cir. 2000) ..................................................................................... 4

*Cottrell v. AT&T Inc.*,
   2021 WL 4963246 (9th Cir. Oct. 26, 2021)......................................................... 2, 12

*Cuviello v. City of Oakland*,
   2009 WL 734676 (N.D. Cal. Mar. 19, 2009)............................................................ 15

*DiCarlo v. MoneyLion, Inc.*,
   988 F.3d 1148 (9th Cir. 2021) ............................................................................ passim

*Dohrmann v. Intuit, Inc.*,
   823 F. App'x 482 (9th Cir. 2020) ............................................................................... 5

*Eiess v. USAA Fed. Sav. Bank*,
   404 F. Supp. 3d 1240 (N.D. Cal. 2019) ...................................................................... 9

*Engalla v. Permanente Med. Grp., Inc.*,
   15 Cal. 4th 951 (1997) ................................................................................................. 8

*Green Tree Financial Corp. v. Randolph*,
   531 U.S. 79 (2000)................................................................................................. 8, 17

*Hill v. BBVA USA*,
   2021 WL 2206477 (S.D. Cal. June 1, 2021)........................................................ 10, 11

*Hodges v. Comcast Cable Commc'ns, LLC*,
   12 F.4th 1108 (9th Cir. 2021) .............................................................................. passim

*In re Ring LLC Privacy Litig.*,
   2021 WL 2621197 (C.D. Cal. June 24, 2021) ............................................................ 6

*Johnmohammadi v. Bloomingdale's, Inc.*,
   755 F.3d 1072 (9th Cir. 2014) ................................................................. 17

*JSM Tuscany, LLC v. Superior Court*,
   193 Cal. App. 4th 1222 (2011) ............................................................. 6, 7

*Kilgore v. KeyBank, Nat'l Ass'n*,
   718 F.3d 1052 (9th Cir. 2013) (*en banc*) ............................................... 14

*Lee v. Ticketmaster L.L.C.*,
   817 F. App'x 393 (9th Cir. 2020) ........................................................... 5

*McGill v. Citibank, N.A.*,
   2 Cal. 5th 945 (2017) ................................................................... *passim*

*Missaghi v. Coca-Cola Co.*,
   2013 WL 12114765 (C.D. Cal. Jan. 2, 2013) ........................................... 7

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
   473 U.S. 614 (1985) .............................................................................. 5, 7

*Norwest Mortg., Inc. v. Superior Court*,
   72 Cal. App. 4th 214 (1999) ................................................................... 6

*Republic of Nicaragua v. Standard Fruit Co.*,
   937 F.2d 469 (9th Cir. 1991) .................................................................. 4

*Revitch v. DIRECTV, LLC*,
   977 F.3d 713 (9th Cir. 2020) .................................................................. 4

*Simula, Inc. v. Autoliv, Inc.*,
   175 F.3d 716 (9th Cir. 1999) .................................................................. 4

*Sparling v. Hoffman Constr. Co.*,
   864 F.2d 635 (9th Cir. 1988) ................................................................. 17

*Stern v. Peloton Interactive, Inc.*,
   2021 WL 4711675 (S.D. Cal. Oct. 7, 2021) ........................................... 5

*United States ex rel. Welch v. My Left Foot Children's Therapy, LLC*,
   871 F.3d 791 (9th Cir. 2017) .................................................................. 9

*Vasquez v. Cebridge Telecom CA, LLC*,
   ____ F. Supp. 3d.____, 2021 WL 5113217 (N.D. Cal. Nov. 3, 2021) .......... 1, 8, 15

*Volt Info. Scis. v. Bd. of Trs. of Leland Stanford Junior Univ.*,
   489 U.S. 468 (1989) ............................................................................... 7

**STATUTES**

9 U.S.C. § 1 ................................................................................................................ 8

9 U.S.C. §§ 1–16 ........................................................................................................ 5

9 U.S.C. § 2 ............................................................................................................. 5, 8

9 U.S.C. § 3 .............................................................................................................. 19

9 U.S.C. § 4 ................................................................................................................ 5

9 U.S.C. § 6 ................................................................................................................ 1

9 U.S.C. § 16(a)(3) ................................................................................................... 19

9 U.S.C. § 16(b)(1)–(2) ........................................................................................... 19

Cal. Bus. & Prof. Code § 17200 ................................................................................ 3

Cal. Bus. & Prof. Code § 17500 ................................................................................ 3

Cal. Civ. Code § 1550 ................................................................................................ 6

Cal. Civ. Code § 1643 ............................................................................................. 5, 6

Cal. Civ. Code § 1750 ................................................................................................ 3

**RULES**

Federal Rule of Civil Procedure 12(b)(3) ............................................................. 1, 17

Defendant Udemy, Inc. ("Udemy") gives notice to all parties and their counsel that on January 20, 2022, at 1:30 PM, or such other time as ordered by the Court, pursuant to 9 U.S.C. § 6 and Fed. R. Civ. P. 12(b)(3), it will and does move the Court for an order compelling arbitration and dismissing this action or staying further proceedings pending arbitration. In support of its motion, Udemy relies on this notice; the following memorandum of points and authorities; declarations of Shannon Behrens, Erin Sink, and Eamonn Hart and any supporting exhibits; the pleadings on file; and any other and further matters and arguments presented to the Court at the time of hearing.

By its motion, Udemy seeks an order granting its motion to compel arbitration and dismiss this action or, in the alternative, stay proceedings pending the completion of arbitration.

## I.    **STATEMENT OF ISSUES**

1.    Whether Plaintiff can meet his burden to prove that the parties' arbitration agreement plainly prohibits an arbitral award of a prospective public injunction;

2.    Whether Plaintiff's complaint seeks a prospective public injunction;

3.    Whether the Court should compel arbitration of Plaintiff's dispute with Defendant; and

4.    Whether the Court should dismiss or stay this action pending arbitration of that dispute.

## II.    **INTRODUCTION**

Plaintiff Marion Williams ("Williams") and Udemy entered into a binding agreement to resolve disputes on an individual basis in arbitration. Nevertheless, Williams initiated this lawsuit in violation of that agreement. Unlike in *Vasquez v. Cebridge Telecom CA, LLC*, ___ F. Supp. 3d. ___, 2021 WL 5113217 (N.D. Cal. Nov. 3, 2021), and notwithstanding *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017), the arbitration agreement here is enforceable for two reasons.

*First*, while this agreement bars class actions that would resolve the claims of other Udemy users, it contains *no* prohibition on the award of a prospective public injunction—a remedy indisputably available in individual actions. *See DiCarlo v. MoneyLion, Inc.*, 988 F.3d 1148, 1156 (9th Cir. 2021) ("[A] plaintiff bringing an individual lawsuit may seek public injunctive relief"). Moreover, the rules governing *this* arbitration—those of the American Arbitration Association ("AAA"), including its Consumer Due Process Protocol—expressly permit the award of *all* relief available in

MOTION TO COMPEL ARBITRATION
CASE NO. 3:21-CV-06489-EMC

court, whether at law or equity. Declaration of Eamonn Hart ("Hart Dec."), Ex. A at 3 (Principle 14); *see also id.*, Ex. C at 10 ¶ C–7(c). Finally, if any doubt lingered about the extent of the arbitrator's powers, "both California law and the FAA tell us what to do next—construe the Agreement to abide by *McGill* and allow arbitration." *DiCarlo*, 988 F.3d at 1158. Since the parties' agreement permits Williams to obtain public injunctive relief in arbitration, this Court should enforce it.

*Second*, even if the arbitration agreement could be construed to prohibit the arbitral award of a prospective public injunction, the agreement is still enforceable under *McGill* for the simple reason that Williams does not actually seek a public injunction in his complaint. The "primary beneficiaries" of the injunctive relief sought by Williams are current and prospective customers of Udemy who browse the Udemy website, not the public at large. *Cf. Cottrell v. AT&T Inc.*, 2021 WL 4963246 (9th Cir. Oct. 26, 2021) (although the requested injunction "could be said to benefit the general public in the form of those 'persons *considering* entering into' a transaction with Comcast, that was insufficient to transform otherwise private relief into a public injunction") (emphasis in original). Moreover, as the Ninth Circuit recently held in *Hodges v. Comcast Cable Commc'ns, LLC*, 12 F.4th 1108, 1117 (9th Cir. 2021), any claim by Williams that a generic prohibition against future violations of the law meets the *McGill* standard for public injunctive relief would rest "on the implicit premise that *any* forward-looking relief to enjoin any illegal conduct is automatically public injunctive relief that benefits the general public as a whole. This is a clear misreading of *McGill*." *Id.* (citation omitted; emphases in original).

For these reasons, the Court should enforce the parties' agreement to arbitrate and dismiss or stay this action pending arbitration.

## III.    FACTUAL BACKGROUND

### A.    Williams Files His Complaint in Federal Court Asserting Claims Against Udemy.

Udemy sells online instructional courses. ECF 1 (Complaint) ¶ 1. On September 25, 2020, Williams, a Maryland resident, bought an online course, "AWS Certified Solutions Architect – Associate 2020," from Udemy through Udemy's website. *Id.* ¶¶ 33–34; Shannon Behrens Declaration ("Behrens Dec.") ¶ 5; Erin Sink Declaration ¶¶ 5–9. According to Williams, the "original price" of the

course was listed at $94.99, but he paid a sale price of $12.99. ECF 1 ¶¶ 33–34. On August 23, 2021, Williams filed this putative class action alleging that he was deceived by Udemy because, he alleges (and Udemy disputes), the course was never offered at $94.99 within 90 days before his purchase. *Id.* ¶ 35. He contends that this alleged deception violated California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*, ECF 1 ¶¶ 57–72; its False Advertising Law, Cal. Bus. & Prof. § 17500 *et seq.*, ECF 1 ¶¶ 73–79; and its Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.*, ECF 1 ¶¶ 80–84.

**B.     Williams Agreed to Udemy's Terms When He Purchased His Course.**

Williams used his computer to visit udemy.com. ECF 1 ¶ 33. To buy a course, Williams had to navigate the Udemy checkout process. Sink Dec. ¶ 5; Behrens Dec. ¶¶ 7–12; *see also* ECF 1 ¶ 34. When selecting the course, he had the option either to click an "Add to Cart" or "Buy Now" button. Behrens Dec. ¶ 8. Either way, he would have ended up at the "Checkout" page to complete his purchase. *Id.* ¶¶ 9–10. To complete his purchase, Williams was required to click a "Complete Payment" button. *Id.* ¶ 11. This button appeared immediately below the statement: "By completing this purchase you agree to these **Terms of Service**." *Id.* ¶ 12 & Ex. A (screenshot of checkout page). The phrase "Terms of Service" is bold-faced, in a different color text, and contains a hyperlink to the then-applicable Udemy Terms. *Id.* ¶¶ 11–12 & Ex. A. Williams admits "he proceeded to finish checking out and purchased the 'AWS Certified Solutions Architect – Associate 2020'" course from Udemy. ECF 1 ¶ 34. He also acknowledges that the Terms control his dispute with Udemy by relying on them expressly in his Complaint to allege that California law governs that dispute. *Id.* ¶ 41.

**C.     The Terms Require Williams to Arbitrate His Claims.**

The third paragraph of the Terms—the only one in bold-face type—stated: "**[i]f you live in the United States or Canada, by agreeing to these Terms, you agree to resolve disputes with Udemy through binding arbitration (with very limited exceptions, not in court), and you waive certain rights to participate in class actions, as detailed in the Dispute Resolution section.**" Behrens Dec. ¶ 14 & Ex. B at 1. Just below this paragraph was a short Table of Contents, which

included a hyperlink directly to the Dispute Resolution section, Section 9 of the Terms. *Id.* ¶ 15 & Ex. B at 1.

The first paragraph of the Dispute Resolution section said, "If there's a dispute, our Support Team is happy to help resolve the issue. If that doesn't work and you live in the United States or Canada, your options are to go to small claims court or bring a claim in binding arbitration; you may not bring that claim in another court or participate in a non-individual class action claim against us." *Id.* ¶ 16 & Ex. B at 11 ¶ 9. Numbered paragraph 9.2 stated that:

> If we can't resolve our dispute amicably, you and Udemy agree to resolve any claims related to these Terms (or our other legal terms) through final and binding arbitration, regardless of the type of claim or legal theory. If one of us brings a claim in court that should be arbitrated and the other party refuses to arbitrate it, the other party can ask a court to force us both to go to arbitration (compel arbitration). Either of us can also ask a court to halt a court proceeding while an arbitration proceeding is ongoing.

*Id.* ¶ 19 & Ex. B at 12 ¶ 9.2. Numbered paragraph 9.3 of the Terms explained that:

> A party electing arbitration must initiate proceedings by filing an arbitration demand with the American Arbitration Association (AAA). The arbitration proceedings shall be governed by the AAA Commercial Arbitration Rules, Consumer Due Process Protocol, and Supplementary Procedures for Resolution of Consumer-Related Disputes.

*Id.* ¶ 20 & Ex. B at 12 ¶ 9.3.

Numbered paragraph 9.4, "No Class Actions," limited the parties to individual claims for relief:

> We both agree that we can each only bring claims against the other on an individual basis. This means: (a) neither of us can bring a claim as a plaintiff or class member in a class action, consolidated action, or representative action; (b) an arbitrator can't combine multiple people's claims into a single case (or preside over any consolidated, class, or representative action); and (c) an arbitrator's decision or award in one person's case can only impact that user, not other users, and can't be used to decide other users' disputes. If a court decides that this "No class actions" clause isn't enforceable or valid, then this "Dispute Resolution" section will be null and void, but the rest of the Terms will still apply.

*Id.* ¶ 21 & Ex. B at 12 ¶ 9.4.

## IV.   THE LEGAL STANDARD ON MOTIONS TO COMPEL ARBITRATION.

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, "reflect[s] both a liberal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *AT&T*

*Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citation omitted). Under the FAA, an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

 "The Court's role under the Act is … limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (citing 9 U.S.C. § 4; *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719–20 (9th Cir. 1999); and *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 477–78 (9th Cir. 1991)); *see also Revitch v. DIRECTV, LLC*, 977 F.3d 713, 716 (9th Cir. 2020). "If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron*, 207 F.3d at 1130.

"When in doubt, both federal and state law point toward interpreting the Agreement to permit arbitration. Cal. Civ. Code § 1643 (instructing courts to adopt a 'lawful' contract interpretation that is 'capable of being carried into effect' when possible); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) (favoring arbitration)." *DiCarlo*, 988 F.3d at 1152 (citation omitted). Here, the parties agree that, pursuant to the Terms, California law governs such questions. *See* Behrens Dec., Ex. B ¶ 8.5 (Governing Law and Jurisdiction); see also ECF 1 ¶ 41 (citing the Terms to invoke California law).

In short, if there exists any ambiguity in an arbitration agreement—including as to the relief that the arbitrator is empowered to award—the courts must resolve that ambiguity in a way that permits the agreement to be lawfully carried into effect. *DiCarlo*, 988 F.3d at 1152 (citing Cal. Civ. Code § 1643); *see also id.* at 1158 (construing contract to avoid state law doctrine that would prevent arbitration agreement from being enforced).

## V.   ARGUMENT

### A.   Williams and Udemy Entered into a Binding Arbitration Agreement.

The arbitration agreement between Williams and Udemy is contained in the Terms to which Williams agreed when he made his purchase. It is binding on the parties as a matter of basic contract law.

MOTION TO COMPEL ARBITRATION
CASE NO. 3:21-CV-06489-EMC

1

**1.      The Agreement Is Binding Because Williams Accepted the Terms.**

Under California law, a contract requires two parties capable of contracting; consent; a lawful object; and sufficient cause or consideration. See Cal. Civ. Code § 1550; *see also Stern v. Peloton Interactive, Inc.,* 2021 WL 4711675, * 7 (S.D. Cal. Oct. 7, 2021). In an online transaction, the Ninth Circuit has held that a party can agree to contract terms by clicking a button. *Dohrmann v. Intuit, Inc.*, 823 F. App'x 482, 484 (9th Cir. 2020) (clicking "Sign In" button indicated assent to terms where the button was adjacent to text stating that that clicking "Sign In" constituted agreement to terms); *Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393, 394–95 (9th Cir. 2020) (clicking on "Place Order" button represented valid assent to online ticket seller's terms under California law, where the button was immediately adjacent to text stating that by clicking "Place Order," the buyer agreed to the terms); *see also Burzdak v. Universal Screen Arts*, 2021 WL 3621830, *3–*6 (N.D. Cal. Aug. 16, 2021) (explicating and applying *Dohrmann* and *Lee*); *In re Ring LLC Privacy Litig*., 2021 WL 2621197, *5 (C.D. Cal. June 24, 2021) (noting that "the majority of California district courts take the *Dohrmann* and *Lee* approach" and collecting cases in which clicking on a button, where the button was in close proximity to text warning that clicking the button constituted agreement to terms, was held to create a binding contract).

By his own account, Williams bought access to an online course from Udemy in exchange for a payment of $12.99. ECF 1 ¶ 34. He admits that he used Udemy's website to make his purchase, and "finished checking out" to do so. *Id.* To check out, Williams had to agree to Udemy's Terms by affirmatively clicking a "Complete Payment" button. Behrens Dec. ¶ 11 & Ex. A. A clear and conspicuous disclosure adjacent to the button explained that, by clicking it, Williams was agreeing to the Terms. *Id.* ¶ 12 & Ex. A.

The Terms (and the arbitration agreement they contain) are also binding for another reason. Williams relies upon the Terms in order to bring his claim under California law and therefore ought to be estopped from denying his agreement to them. ECF 1 ¶ 41; *see Bentley v. Ctrl. Grp. Media*, 2020 WL 3639660, *3 (S.D. Cal. July 6, 2020) ("It is unfair for a party to rely on a contract when it works to its advantage and repudiate it when it works to its disadvantage.") (cleaned up); *cf. JSM Tuscany, LLC v. Superior Court*, 193 Cal. App. 4th 1222, 1239–40 (2011) (permitting non-signatory defendant

MOTION TO COMPEL ARBITRATION
CASE NO. 3:21-CV-06489-EMC

to enforce arbitration agreement when the plaintiff relied upon the contract terms in order to bring the claim).

Specifically, Williams resides in Maryland, not California, and does not allege that his purchase was made from a location within California. Absent the Terms, which provide that California law governs the parties' agreement (ECF 1 ¶ 41; Behrens Dec., Ex. B at 10–11 § 8.5) California's consumer protection laws—under which Williams brings his claims—would not apply. *See Norwest Mortg., Inc. v. Superior Court*, 72 Cal. App. 4th 214, 222 (1999) ("We ordinarily presume the Legislature did not intend the statutes of this state to have force or operation beyond the boundaries of the state.") (citations omitted). Having sought the benefit of the Terms, Williams should not be permitted to deny the balance of their requirements. *See Bentley* and *JSM Tuscany, LLC*, *supra*.

### 2.   The Federal Arbitration Act Governs Because the Parties' Arbitration Agreement "Involve[s] Commerce."

The FAA applies to written arbitration agreements "involving commerce," 9 U.S.C. § 2, and defines "commerce" as, among other things, "commerce among the several States." 9 U.S.C. § 1. Here, Williams, a Maryland resident, *see* ECF 1 ¶ 33, made a purchase from Udemy, a Delaware business based in California, *see id.* ¶ 41, of an internet-based instructional course. He seeks relief from this Court under California law as set out in the Terms. *See id*. Here, there can be no dispute that the "involving commerce" requirement has been met and, accordingly, the FAA applies.

### 3.   The Arbitration Agreement Encompasses the Dispute Because It Applies to "All" of Williams' "Activities on the Udemy Website."

Williams' claims also fall squarely within the scope of his agreement. In making the determination of whether the language of the agreement encompasses a party's claims, "a court must give 'due regard … to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." *Missaghi v. Coca-Cola Co.*, 2013 WL 12114765, at *4 (C.D. Cal. Jan. 2, 2013) (quoting *Volt Info. Scis. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 476 (1989). "Thus, 'as with any contract, the parties' intentions control, but those intentions must be generously construed as to issues of arbitrability.'" *Id.* (quoting *Mitsubishi Motors Corp.*, 473 U.S. at 615).

The Terms obligated Williams "**to resolve disputes with Udemy through binding arbitration (with very limited exceptions, not in court)** …." Behrens Dec. ¶ 14, Ex. B (bold-faced type in original). The opening paragraph of the Terms makes clear that that "[t]hese Terms apply to all your activities on the Udemy website, the Udemy mobile applications, our TV applications, our APIs, and other related services (**"Services"**)." *Id*., Ex. B (bold-faced type in original). When Williams purchased his course, he received "a license from [Udemy] to view it via the Udemy Services and no other use." *Id*., Ex. B at 2 ¶ 2. Udemy stated its pricing policies in paragraph 3.1 of the Terms. *See id*., Ex. B at 3 ¶ 3.1. That paragraph included notice that pricing for individual courses might differ across different platforms and that those different prices might be available through promotional offers. *See id*.

Williams claims that Udemy engaged in "misleading and deceptive price comparison advertising that represented false reference prices and corresponding deeply discounted phantom 'sale' prices." ECF 1 ¶ 61 (first cause of action); *see also* ¶ 79 (second cause of action based on "misleading and false advertisements" relating to course prices); ¶¶ 80, 82 (third cause of action based on deceptive advertising relating to course prices). Accordingly, Plaintiff's complaint embodies a dispute between Williams and Udemy within the scope of the Terms, and is, accordingly, governed by them.

**B.      Williams Cannot Meet His Burden to Establish That the Parties' Arbitration Agreement Is Unenforceable Under *McGill*.**

Once contract formation has been established, the burden then shifts to Williams to prove that the arbitration agreement is unenforceable. *Green Tree Financial Corp. v. Randolph*, 531 U.S. 79, 91–92 (2000); *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 952 (1997). In addition to this burden of proof, Williams must also overcome a presumption that any uncertainty or ambiguity on the question of enforceability be resolved in favor of the obligation to arbitrate. *DiCarlo*, 988 F.3d at 1158.

Williams will likely argue that the court should decline to enforce the parties' valid agreement based on the holding of *McGill*. The "*McGill* rule" provides that an arbitration agreement conditioned upon a clear and complete waiver of the right to seek a prospective public injunction cannot be enforced. *Hodges*, 12 F.4th at 1111; *see also Vasquez*, 2021 WL5113217, at *4 (citing *Blair v. Rent-*

*A-Ctr., Inc.*, 928 F.3d 819, 822 (9th Cir. 2019)).[1] As explained below, this argument fails for two reasons. *First*, the Terms place no restrictions on the ability of an arbitrator to award a prospective public injunction. *Second*, Williams' complaint does not seek prospective public injunctive relief.[2]

### 1.    The Terms Do Not Prohibit Prospective Public Injunctions.

The *McGill* rule only invalidates arbitration agreements which unambiguously prohibit prospective public injunctions. *See DiCarlo*, 988 F.3d at 1152–53, 1158. To determine whether an arbitration agreement unambiguously prohibits a prospective public injunction, courts first analyze the agreement like any other contract—looking first to its text to ascertain the relief an arbitrator may order. *See United States ex rel. Welch v. My Left Foot Children's Therapy, LLC*, 871 F.3d 791, 796 (9th Cir. 2017) ("As with any other contract dispute, we first look to the express terms. If the text is plain and unambiguous, that is the end of our analysis because we must rigorously enforce arbitration agreements according to their terms.") (cleaned up). However, if any ambiguity lingers as to whether the arbitrator can issue such an injunction, the Ninth Circuit has been clear: such ambiguities must be

---

[1] The Ninth Circuit has held that the *McGill* rule is not preempted by the FAA. *See Vasquez*, 2021 WL5113217 at *4 (citing *Blair*, 928 F.3d at 822). Udemy disagrees with the holding of *Blair*, however, and hereby preserves a challenge to it. *See id.* at *6 n.1. Notably, multiple petitions for *certiorari* are currently pending in the U.S. Supreme Court arguing that the *McGill* rule is preempted by the FAA. *See Fast Auto Loans v. Maldonado*, No. 21–31; *HRB Tax Group, Inc. v. Snarr*, No. 20–1570.

[2] As noted, Udemy's Terms incorporate certain rules of the AAA. *See* Behrens Dec. ¶ 20 & Ex. B at 12 ¶ 9.3; *see also* Hart Dec., Exs. A–C. The Ninth Circuit has "h[e]ld that incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agree to arbitrate arbitrability." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). Under *Brennan*, in the event that a question of arbitrability is raised by Williams, this Court should grant Udemy's motion and compel arbitration so that the arbitrator may decide whether this dispute should be arbitrated. Udemy recognizes that there is an unresolved split of authority within the district courts over the extent to which the holding of *Brennan* applies to consumer contracts involving at least one unsophisticated party. *See Eiess v. USAA Fed. Sav. Bank*, 404 F. Supp. 3d 1240, 1252–53 (N.D. Cal. 2019) (describing split). However, Williams' complaint does not allege, let alone establish, that he is "unsophisticated." Udemy believes that the *Brennan* rule should apply, and that the Court may compel arbitration on that ground alone. The opinion in *Brennan* itself notes that "the vast majority of the circuits that hold that incorporation of the AAA rules constitutes clear and unmistakable evidence of the parties' intent to [delegate the arbitrability determination] without explicitly limiting that holding to sophisticated parties or to commercial contracts." 796 F.3d at 1130–31. Recognizing that this Court has reached the opposite conclusion before, however, *see Eiess, supra*, Udemy raises the issue only to preserve it.

resolved *in favor of allowing such relief and permitting the arbitration to go forward. DiCarlo*, 988 F.3d at 1158.

The agreement at issue here does not prohibit prospective public injunctions, let alone unambiguously. First, nothing in the Terms provides that the arbitrator cannot enter such an injunction. In fact, as detailed below, the Terms incorporate AAA Rules that empower an arbitrator to do so. Second, although the Terms prohibit class claims, a mere prohibition on *class claims* cannot be transformed into a prohibition on a different species of claims: *claims for public injunctive relief.* This is particularly true in the Ninth Circuit where public injunctive relief is available in individual lawsuits. Lastly, even if the arbitration agreement could be construed in such a way that called into question the availability of a prospective public injunction, any prohibition of such relief would need to be unambiguous to foreclose arbitration. Because no express prohibition exists, *McGill* does not bar enforcement of the agreement here.

> a.   *The Terms Permit an Arbitrator to Enter a Prospective Public Injunction Through Incorporation of the AAA Rules.*

The Terms state: "the arbitration proceedings shall be governed by the AAA Commercial Arbitration Rules, Consumer Due Process Protocol, and Supplementary Procedures for Resolution of Consumer-Related Disputes." Behrens Dec. ¶ 20. The AAA Consumer Due Process Protocol states as one of its core principles that arbitrators in consumer disputes have the authority to enter all the relief which a court can enter, both legal and equitable; Hart Dec. ¶ 6 & Ex. A at 3. And under the AAA's Supplementary Procedures for Resolution of Consumer-Related Disputes, "The arbitrator may grant any remedy, relief or outcome that the parties could have received in court." *Id.* ¶ 9 & Ex. C at 10 ¶ C-7(c); *see also Hill v. BBVA USA*, 2021 WL 2206477, at *4 (S.D. Cal. June 1, 2021) (incorporation of the AAA rules confirmed the claimant's right to obtain an arbitral public injunction). Because the AAA rules permit the arbitrator to enter all equitable relief that could be entered in court, and the Terms incorporate those rules, the Terms must be construed to permit an arbitrator to enter a prospective public injunction.

b.      *The Terms' Prohibition on Class Claims is Irrelevant to Determining Whether the Terms Prohibit a Prospective Public Injunction.*

It is possible that Williams may argue that Paragraph 9.4 of the Terms ("No Class Actions") impliedly prohibits prospective public injunctions. Behrens Dec. ¶ 21 & Ex. B at 12 ¶ 9.4. This section does no such thing. Rather, the parties simply agree to "only bring claims against each other on an individual basis." *Id*. Such an agreement cannot be construed to prohibit public injunctive relief because the Ninth Circuit extensively analyzed this precise issue in making clear that public injunctive relief is available in individual lawsuits and therefore compelling arbitration. *DiCarlo*, 988 F.3d at 1158 (9th Cir. 2021) ("[L]itigants proceeding in individual lawsuits may request public injunctive relief").

In *Hill*, the court faced the same argument and rejected it. In that case, the plaintiffs argued "that the Agreement's bar on representative, class, and collective actions prohibit[ed] Plaintiffs from seeking public injunctive relief for their UCL claim, and therefore the Agreement is invalid under the *McGill* rule." 2021 WL 2206477 at *3. That agreement provided that the plaintiffs "cannot join together in a dispute with anyone other than people who use [their] Account," and "cannot arbitrate any dispute on a class action, private attorney general or other representative basis." *Id*. (quotation marks omitted and brackets in original). Relying on *DiCarlo*, the court ruled that the arbitration agreement was valid and enforceable despite *McGill*, because the plaintiffs "could seek public injunctive relief despite the arbitration agreement's ban on representative actions because such a clause does not restrict the availability of public injunctive relief." *Id*. The ruling in *Hill* is consistent with *Hodges*, which teaches that, at its core, "public injunctive relief" "does *not* constitute the pursuit of representative claims or relief on behalf of others." 12 F.4th at 1114 (quoting *McGill*, 2 Cal. 5th at 959–60).

*DiCarlo*, on which *Hill* relied, is instructive and controlling. Just as in *DiCarlo*, the agreement here excludes *class* claims, but does not limit the scope of the available injunctive relief. "In California, litigants proceeding in individual lawsuits may request public injunctive relief without becoming private attorneys general. That means public injunctive relief is available to [the plaintiff] in arbitration with [the defendant]. Since the arbitration provision does not violate the *McGill* rule, it

MOTION TO COMPEL ARBITRATION
CASE NO. 3:21-CV-06489-EMC

is valid." *DiCarlo*, 988 F.3d at 1158; *see also Hill v. BBVA USA*, 2021 WL 2206477, *4 (S.D. Cal. June 1, 2021) (compelling arbitration of dispute under agreement that limited representative claims but not public injunctive relief).

Thus, as in *Hill* and *DiCarlo*, the agreement's mere prohibition on seeking class relief is insufficient to invoke *McGill* to invalidate the agreement.

*c.*   *The Mere Inference of a Prohibition Against Public Injunctive Relief is Not Enough to Invalidate an Agreement to Arbitrate.*

Even if a prohibition on the issuance of a public injunction by the arbitrator could be inferred from the text of the parties' agreement (it cannot) that inference could at most create an ambiguity, particularly in light of the express incorporation of AAA rules. In the case of such an ambiguity, arbitration agreements must be read to allow an arbitral award of a prospective public injunction. *DiCarlo* at 1158 ("both California law and the FAA tell us what to do next—construe the Agreement to abide by *McGill* and allow arbitration"). Stated differently, "[w]hen in doubt, both federal and state law point toward interpreting the Agreement to permit arbitration." *Id.* at 1152.

Similarly, even if Paragraph 9.4 raised doubt about the availability of a prospective public injunction, *DiCarlo* teaches that in determining whether an agreement precludes injunctive relief courts must resolve any ambiguity in favor of permitting an arbitrator to award public injunctive relief, and to permit the arbitration agreement to be enforced under *McGill*. *See* 988 F.3d at 1152, 1158. Put simply, the text of the agreement unambiguously *allows* an arbitrator to award public injunctive relief. But even if the Court rejects this argument, there is no plausible reading under which the agreement unambiguously *prohibits* an arbitrator from doing so. Under clear Ninth Circuit precedent, Williams should be compelled to arbitrate this dispute.

**2.     Williams' Complaint Fails the *Hodges* Test.**

Even if the arbitration agreement prohibited an arbitrator from issuing a prospective public injunction, *McGill* still would not bar the enforcement of the arbitration agreement between Udemy and Williams because Williams is not, in fact, seeking public injunctive relief in his complaint.

In its recent opinion in *Hodges*, reversing the denial of a motion to compel arbitration, the Ninth Circuit gave a clear exposition of the applicable test. *First*, the question under *McGill* is not

12

whether a complaint might have sought injunctive relief, but whether, in fact, it does so. *See Cottrell*, 2021 WL 4963246 at *2 (noting that *Hodges* "rejected the proposition 'that courts should stretch to invalidate contracts based on hypothetical issues that are not actually presented in the parties' dispute'" (quoting *Hodges*, 12 F.4th at 1113)).

*Second*, to seek "public injunctive relief," a complaint must satisfy three criteria: (1) seek "forward-looking relief that generally aims to prevent unlawful conduct in the future;" *Hodges*, 12 F.4th at 1114; (2) seek relief that "does *not* constitute the pursuit of representative claims or relief on behalf of others;" *id*. (quoting *McGill*, 2 Cal. 5th at 959–60); and (3) seek relief that involves diffuse benefits to the general public as a whole, *not* benefits to an individual plaintiff or class of similarly situated individuals. *Id*. at 1114–15 (quoting *McGill*, 2 Cal. 5th at 959–60).

*Third*, a plaintiff must also seek more than "an incidental public benefit from what is otherwise class-wide private injunctive relief…" *Id*. at 1118 (quoting *McGill*, 2 Cal. 5th at 955). "Merely declaring that a claim seeks a public injunction…is not sufficient to bring that claim within the bounds of the rule set forth in *McGill*." *Blair v. Rent-A-Ctr., Inc.*, 2017 WL 4805577, *2 (N.D. Cal. Oct. 25, 2017), aff'd in part, appeal dismissed in part, 928 F.3d 819 (9th Cir. 2019).

In addition to these primary principles, the Ninth Circuit has made clear that, to qualify for *McGill* protection, the request for a public injunction must not involve "a level of procedural complexity that is inherently incompatible the informal, bilateral nature of traditional consumer arbitration, and with the efficient, streamlined procedures that the FAA seeks to protect." *Hodges*, 12 F.4th at 1120 (citations and internal quotation marks omitted).

Williams fails at each step. His complaint does not articulate a valid request for public injunctive relief. The relief he actually seeks is primarily for his own benefit and/or the benefit of Udemy users who make up the class he proposes to represent. Indeed, the only public benefit his complaint seeks is a generic instruction to Udemy to follow the law. *Hodges* requires more to overcome the presumption in favor of enforcement of an arbitration agreement.

Whether Williams' complaint seeks public injunctive relief depends on the specific allegations of that complaint. *Hodges*, 12 F.4th at 1113. In his prayer for relief, Williams asks for the following:

MOTION TO COMPEL ARBITRATION
CASE NO. 3:21-CV-06489-EMC

a.     an order certifying the class and designating Plaintiff Marion Williams as the Class Representative and his counsel as Class Counsel;

b.     awarding restitution and disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiff and the Class members as a result of its unlawful, unfair, and fraudulent business practices described herein;

c.     awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendant from continuing the unlawful practices as set forth herein, and directing Defendant to identify, with Court supervision, victims of its misconduct and pay them all money they are required to pay;

d.     order Defendant to engage in a corrective advertising campaign;

e.     awarding attorneys' fees and costs; and

f.     for such other and further relief as the Court may deem necessary or appropriate.

ECF 1 at 22, Prayer for Relief. The complaint alleges that he seeks such relief on behalf of himself and a class he defines as: "All persons, within the United States, who, within the preceding four years (the 'Class Period'), purchased from Udemy's e-commerce website, one or more products at discounts from an advertised reference price and who have not received a refund or credit for their purchase(s)." *Id.* ¶ 49. As justification for an injunction, Williams specifically invokes his own desire to make future purchases from Udemy as a reason injunctive relief is necessary. *Id.* ¶ 37 ("Plaintiff desires to continue purchasing instructional courses from Udemy.com in the future."). He similarly invokes the possibility that Class Members (who, as noted above, are only composed of current and prior Udemy customers) "will continue to purchase the Udemy courses while reasonably but incorrectly believing that their advertised reference prices represent *bona fide* former prices." *Id.*

Applying the *Hodges* test set forth above, Williams' Prayers (a), (b), (d), (e), and (f) do not seek a prospective public injunction. Specifically, Prayers (a) and (b) seek benefits only on behalf of Williams and the putative class, failing the second *Hodges* criterion. Prayer (d) would require Udemy to publish advertising to correct its past alleged violations, which is a retrospective remedy, not a prospective one, failing the first *Hodges* criterion. *See* ECF 1 ¶ 6 ("to correct the false and misleading perception it has created in the minds of consumers"); *see also Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1061 (9th Cir. 2013) (*en banc*) (relief was private because requested injunction related for all practical purposes only to past harms). Prayer (e) benefits only Williams' counsel. Prayer (f)

MOTION TO COMPEL ARBITRATION
CASE NO. 3:21-CV-06489-EMC

describes no relief at all. Thus, none of these Prayers for Relief qualifies as seeking a prospective public injunction under *Hodges*.

Only Prayer (c) remains. This Prayer has two parts. One part seeks an order requiring Udemy to identify and compensate any alleged victims; by its own terms, therefore, it is not a prospective remedy. Because this part of Prayer (c) only seeks to benefit prior Udemy customers, and not the public at large, it does not satisfy the second of the *Hodges* criteria.

The second part of Prayer (c) seeks an injunction against Udemy continuing its allegedly unlawful practices. *See also* ECF 1 ¶ 6 ("Plaintiff also seeks to enjoin Defendant from using false and misleading misrepresentations regarding former price comparisons in its labeling, marketing, and advertising permanently."). In other words, Plaintiff seeks an injunction merely directing Udemy to obey the law. Courts in this district and nationwide have expressed skepticism of, or outright rejected, injunctions that do nothing more than order a defendant to obey the law. *See Cuviello v. City of Oakland*, 2009 WL 734676, *3 (N.D. Cal. Mar. 19, 2009) (collecting cases).

If a plaintiff need only request an order directing a defendant to "obey the law" to state a claim for public injunctive relief, then virtually any plaintiff could sidestep an agreement to arbitration by inserting a single boilerplate request in a complaint. Moreover, it would be impossible to tell, as here, whether the requested injunction would have the necessary textual and administrative simplicity to satisfy *Hodges* and *McGill* compatible with "the informal, bilateral nature of traditional consumer arbitration," as is Williams' burden to show. *Hodges*, 12 F. 4th at 1120 (citation omitted).

Udemy respectfully submits that allowing "obey the law" injunction requests to invalidate an arbitration agreement would, in the end, conflict squarely with *Hodges*, which holds that under *McGill*, "an incidental public benefit from what is otherwise class-wide private injunctive relief is not sufficient to establish that the requested injunction is actually public relief." 12 F.4th at 1118. While some requests for an injunction against future false advertising *would* amount to a request for public injunctive relief, this is not one of them. Unlike in *Vasquez*, the complaint here does not describe specific advertising to be enjoined. *See Vasquez*, 2021 WL 5113217 at *7–8 (identifying four specific public injunctions set out in the plaintiff's prayer for relief). The complaint in *this* case only offers the

MOTION TO COMPEL ARBITRATION
CASE NO. 3:21-CV-06489-EMC

vague prayer that the court should "enjoin Defendant from continuing the unlawful practices as set forth herein." ECF 1 at 22, Prayer for Relief, (c). The lip service Williams pays to the public interest elsewhere does not concretize the requested relief in a way that satisfies the *Hodges* test. *See id.* ¶¶ 7 ("public interest"); 38 ("Plaintiff, Class members and the public lack an adequate remedy at law"); 54 ("Class members and the general public would not likely recover…"); 79 ("Plaintiff, Class members, and the broader general public will be irreparably harmed.").

Moreover, courts have found that generic "obey the law" injunctions, particularly in the context of laws that involve complex factual variables, fall outside of *McGill* precisely because they provide little public benefit and serve as a mere tagalong when asserted in connection with a case that is, at its core, a representative action. Permitting injunctions with incidental benefits to the public to qualify as "public injunctive relief" just by proclaiming them as public would allow plaintiffs to style virtually every lawsuit as one seeking public injunctive relief. *See Blair*, 2017 WL 4805577 at *2 (more than self-serving statement that the requested relief is "public" required).

Finally, it is important to note that the complaint does not identify any advertising directed to the public at large, *e.g.,* advertisements placed on television, radio, a billboard, or in mass media (whether print or online). The only individuals who see the prices Williams alleges to be "false advertising" are those who have chosen to visit udemy.com. This is, by definition, a self-selected group of persons interested in Udemy's online course offerings. Such an audience is considerably smaller than the "general public."

Because the law must recognize a distinction between a valid plea for public injunctive relief and a generic plea for an injunction against wrongdoing, Udemy respectfully submits that the generic relief Williams seeks here—"enjoining Defendant from continuing the unlawful practices as set forth herein," ECF 1 at 22, Prayer for Relief, (c)—falls into the latter category. As explained earlier, allowing such a generic injunction to fall within the ambit of *McGill* would be based upon an "implicit premise that *any* forward-looking relief to enjoin *any* illegal conduct is automatically public injunctive relief that benefits the public as a whole." *Hodges*, 12 F.4th at 1117 (9th Cir. 2021).

**C.    The Court May Dismiss or Stay the Action Pending Arbitration.**

In the agreement, Williams agreed to two potential venues for dispute resolution with Udemy: small claims court or arbitration with AAA. That agreement renders this Court an improper venue, making the action amenable to dismissal under Federal Rule of Civil Procedure 12(b)(3). However, 9 U.S.C. § 3 provides that a district court "shall on application of one of the parties stay the trial of the action until such arbitration has been had." The Ninth Circuit has recognized that the district court has the discretion to stay *or* dismiss outright an action subject to arbitration. *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1073–74 (9th Cir. 2014) (citing *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988)). In the former instance, the order compelling arbitration may not be immediately appealed. *Id*. at 1074 (citing 9 U.S.C. § 16(b)(1)–(2); *Green Tree*, 531 U.S. at 87 n.2). In the latter, it may. *Id*. (citing 9 U.S.C. § 16(a)(3); *Green Tree*, 531 U.S. at 89). Udemy respectfully defers to the court's discretion on the appropriate disposition.

## VI.    <u>CONCLUSION</u>

Based on the foregoing, Udemy respectfully requests that the Court grant its motion to compel arbitration and order the dismissal of this action or a stay of further proceedings pending the completion of arbitration.

1    Dated: November 12, 2021                    **BRANN & ISAACSON**
                                                 DAVID W. BERTONI (*pro hac vice*)
2                                                DAVID SWETNAM-BURLAND (CA 226216)
                                                 EAMONN R.C. HART (*pro hac vice*)
3                                                184 Main Street, 4th Floor
                                                 P.O. Box 3070
4                                                Lewiston, ME 04243-3070
                                                 Tel.: (207) 786-3566
5                                                Fax: (207) 783-9325
                                                 dsb@brannlaw.com
6
                                                 **LAW OFFICES OF RICHARD PACHTER**
7                                                RICHARD PACHTER (CA 120069)
                                                 richard@pachterlaw.com
8                                                555 University Avenue, Suite 200
                                                 Sacramento, CA 95825
9                                                Tel.: (916) 485-1617
                                                 Fax: (916) 379-7838
10

11

12                                               */s/ David Swetnam-Burland*
                                                 _____
13                                               David Swetnam-Burland

14                                               *Attorneys for Defendant Udemy, Inc.*

15

16

17

18

19

20

21

22

23

24

25

26

27

28